From C. P. Addams, Harrisburg, Pa.

---

## Catz-American Company v. Pennsylvania Railroad Company.

*Assumpsit—Common carrier—Change in consignees—Misdelivery—Market value—Loss—Evidence.*

Where a verdict was returned in favor of a defendant railroad company which had delivered a carload of raisins to an original consignee, although directed to deliver to another because the original consignee failed to pay the draft before the arrival of the car, a motion for a new trial was refused because plaintiff's evidence failed to prove that the misdelivery resulted in a loss to plaintiff at the time of the delivery and failed to show the market value of the raisins at the time of the delivery.

Motion *ex parte* plaintiff for new trial. C. P. Allegheny Co., Oct. T., 1922, No. 2854.

Before Shafer, P. J., Douglass and Cohen, J.J.

*John E. McCalmont* and *J. Garfield Houston,* for plaintiff.

*Dalzell, Fisher & Dalzell,* for defendant.

SHAFER, P. J.—The action is for the recovery of the value of certain Malaga raisins shipped by the plaintiff to Pittsburgh, consigned to themselves, and misdelivered by the railroad. It appears from the evidence that the goods were sold by the plaintiffs to Descalzi & Co., in Pittsburgh, about May 6th, and that while they were on the way, about May 26th, the sale to Descalzi was canceled by reason of their non-payment of a draft and the goods were

resold.   The raisins arrived in Pittsburgh June 6th or 7th, and by mistake were delivered to Descalzi, who claims not to have known of the cancellation. While Descalzi was unloading the car on June 7th the mistake was discovered and the unloading was stopped, and the car was not finally unloaded until about June 16th or 17th, when the goods were all delivered to Descalzi upon his payment to the railroad company of $8984.25, which sum was paid by the railroad to the plaintiff upon an agreement that it should not prejudice the plaintiff's claim against the railroad to recover whatever additional amount they might be entitled to.   The claim of the plaintiff is that the fair and reasonable value of the raisins in Pittsburgh on June 17th was 26 cents per pound, or $10,725, and the difference between that and $8984.25 represents the claim of the plaintiff.   The sum already paid by the railroad to the plaintiff represents the value of the raisins at 22 cents a pound.

The plaintiff called the broker who had charge of their affairs in Pittsburgh, who testified that he represented the plaintiff in the matter of the sale of these raisins and as to his making a resale of the raisins on May 26th to the Pennsylvania Macaroni Company, and gave some evidence as to the price of such raisins, and said that the stock of raisins was very scarce and that he could not find another car to fill his order with, and that the nearest substitute for Malaga raisins to be had in the market was Muscatell raisins, and that the market value of those raisins in the middle of June was 26 cents, and that the Malaga raisins would command the same price.   On cross-examination of this witness as to these sales, he was asked the price at which the sale was made on May 26th to the Pennsylvania Macaroni Company, and, under objection, he told that the price was 22 cents and also that the cars would not arrive in Pittsburgh for some seven to ten days thereafter.   It further appeared on cross-examination that the witness derived his knowledge of the price of Mascatell raisins from the quotation sheet of brokers in Pittsburgh.   The plaintiff then called a wholesale grocer, acquainted with the business of handling raisins, who also testified that Muscatell raisins, which were the only kind available and were similar in value to the Malaga raisins, were selling about June 16th for 26 cents and better a pound, and it appeared on cross-examination that the witness referred to job lots and not to carload lots. The reasons assigned for a new trial are substantially that the court erred in allowing plaintiff's broker, who conducted the transaction, to be asked the price at which he made the sale on May 26th, which he told of in chief, and also to the admission of the bills or invoices rendered by the plaintiff to the parties to whom it had sold the raisins.   The burden was on the plaintiff to show that the raisins in question were worth more than it received for them from the railroad at the time of the conversion.   There was evidence from which the jury might have found, as the defendant contended, that the conversion took place on June 7th, and other evidence from which they might have found that it took place anywhere from June 14th to 17th.   All the evidence given by the plaintiff, as far as we can ascertain, as to the value of the raisins, was as to their value about the middle of June.   If the jury believed the conversion to have taken place as defendant claims, on June 7th, they would have no evidence upon which to find a verdict for the plaintiff.

In this view of the case, the fact that the raisins were sold on May 26th for 22 cents a pound would have no bearing on the case and do the plaintiff no harm.   We are not convinced, however, that it was error to allow the party to be asked on cross-examination what he had sold these raisins for two weeks before the alleged conversion.   An offer on the part of the defendant to show the price at which the raisins had been dealt in by the plaintiff two weeks

before the conversion would no doubt have to be rejected, but that is a very different matter from cross-examining a party who is claiming a high price for property when, as a witness, he is testifying to that price, which was substantially the case here, the witness being the broker in charge of the matter. The motion for a new trial is, therefore, refused.

From William J. Aiken, Pittsburgh, Pa.